JANA L. CAMALIER ADMINISTRATRIX C.T.A. OF THE ESTATE OF CALEB WILLARD CAMALIER, CORRIE R. CAMALIER BY AND THROUGH HER DULY APPOINTED GUARDIAN AD LITEM, G. BRYAN COLLINS, JR., LOUISE H. CAMALIER, BY AND THROUGH HER DULY APPOINTED GUARDIAN AD LITEM, G. BRYAN COLLINS, JR., AND JANA L. CAMALIER, INDIVIDUALLY v. CHARLES J. JEFFRIES, FRANK A. DANIELS, JR., AND THE NEWS AND OBSERVER PUBLISHING CO.

No. 93PA94

(Filed 28 July 1995)

1. **Death § 49 (NCI4th)— retirement party—evidence of defendant's intoxication—summary judgment**

The Court of Appeals correctly affirmed the trial court's order for partial summary judgment for plaintiffs as to defendant Jeffries' liability in an action arising from an automobile accident

CAMALIER v. JEFFRIES

[340 N.C. 699 (1995)]

involving Jeffries following a retirement party at the house of his employer, the publisher of the *News and Observer*, at which Jeffries drank three or four gin and tonics. Although defendant Jeffries correctly contended that the Court of Appeals opinion does not clearly reflect a consideration of all the evidence Jeffries presented, plaintiffs established that Jeffries breached a duty to plaintiffs by driving while impaired and running a red light, and Jeffries did not forecast sufficient evidence to create a genuine issue of material fact as to breach of a duty.

**Am Jur 2d, Automobiles and Highway Traffic §§ 361, 646; Damages § 750; Negligence § 1175; Premises Liability §§ 396, 407, 411, 439.**

**Liability of employer for injury resulting from games or other recreational or social activities. 18 ALR2d 1372.**

**Liability, under dramshop acts, of one who sells or furnishes liquor otherwise than in operation of regularly established liquor business. 8 ALR3d 1412.**

**Workmen's compensation: injury sustained while attending employer-sponsored social affair as arising out of and in the course of employment. 47 ALR3d 566.**

**Intoxicating liquors: employer's liability for furnishing or permitting liquor on social occasion. 51 ALR4th 1048.**

2. **Intoxicating Liquor § 59 (NCI4th)— retirement party— automobile accident—social host liability—summary judgment**

The Court of Appeals properly affirmed the trial court's granting of summary judgment for defendants Daniels and the Publishing Company in an action arising from an automobile accident involving a Company employee which followed a retirement party hosted by the Company at Daniels's home and at which the employee consumed three or four gin and tonics. While plaintiffs' evidence tends to show that the employee, Jeffries, was intoxicated at the party, or shortly thereafter, it does not meet the standard espoused in *Hart v. Ivey*, 332 N.C. 299, for social host liability in that plaintiffs failed to forecast any evidence that anyone at the party saw any indications of Jeffries' intoxication or believed that he was intoxicated at the time he was served alcohol at the party. Nor is there a forecast of evidence that Daniels, the Publishing Company, or the bartenders working for them

CAMALIER v. JEFFRIES

[340 N.C. 699 (1995)]

knew that Jeffries had consumed enough alcohol to become intoxicated. In contrast, defendants presented substantial evidence that Jeffries did not display any manifestation of impairment or intoxication at the party.

**Am Jur 2d, Damages § 750; Incompetent Persons § 76; Intoxicating Liquors §§ 35, 36; Negligence § 1175; Premises Liability §§ 407, 411, 439.**

**Liability, under dramshop acts, of one who sells or furnishes liquor otherwise than in operation of regularly established liquor business. 8 ALR3d 1412.**

**Civil Damages Act: liability of one who furnishes liquor to another for consumption by third parties, for injury to or damage caused by consumer. 64 ALR3d 922.**

**Liability to adult social guest injured otherwise than by condition of premises. 38 ALR4th 200.**

**Intoxicating liquors: employer's liability for furnishing or permitting liquor on social occasion. 51 ALR4th 1048.**

**Social host's liability for injuries incurred by third parties as a result of intoxicated guest's negligence. 62 ALR4th 16.**

3. **Evidence and Witnesses § 217 (NCI4th)— automobile accident—social host liability—evidence of condition after leaving party—not admissible as to hosts' knowledge**

The Court of Appeals did not err in considering the granting of a summary judgment motion for defendant social hosts in declining to consider any evidence of the driver's condition or appearance after he left the party. While admissible to prove intoxication, the evidence was not probative on the question of whether defendants knew or should have known that he was intoxicated at the time alcohol was served to him at the party.

**Am Jur 2d, Evidence §§ 273, 297, 397; Expert and Opinion Evidence § 209; Incompetent Persons § 76; Intoxicating Liquors §§ 4, 453.**

**Liability, under dramshop acts, of one who sells or furnishes liquor otherwise than in operation of regularly established liquor business. 8 ALR3d 1412.**

CAMALIER v. JEFFRIES

[340 N.C. 699 (1995)]

Common-law right of action for damage sustained by plaintiff in consequence of sale or gift of intoxicating liquor or habit-forming drug to another. 97 ALR3d 528.

Intoxicating liquors: employer's liability for furnishing or permitting liquor on social occasion. 51 ALR4th 1048.

Social host's liability for injuries incurred by third parties as a result of intoxicated guest's negligence. 62 ALR4th 16.

4. Labor and Employment § 223 (NCI4th)— retirement party—accident following party—respondeat superior liability of employer-host

The Court of Appeals correctly affirmed the trial court's grant of summary judgment for defendant Publishing Company on the issue of vicarious liability for an automobile accident following a retirement party at which the driver had consumed three or four gin and tonics. Plaintiff's evidence was insufficient to forecast a genuine issue of material fact as to whether the attendance of the driver, Jeffries, at the party and his negligent consumption of alcohol there were within the scope of his employment. Defendant presented substantial evidence that Jeffries and other Publishing Company employees were not required to attend the party; no record of attendance was taken; there was no evidence that an employee's failure to attend would have resulted in adverse consequences; the party was held on a weekend, a day that Jeffries did not usually work and at a time that was after his usual working hours; Jeffries was not compensated for the time spent attending the party and was not required to work if he did not attend the party; the party was held at the private home of the newspaper's publisher rather than at the Publishing Company's business facilities; and Jeffries was employed as a reporter but did no reporting while in attendance at the party.

Am Jur 2d, Master and Servant §§ 404-417; Negligence § 1175; Premises Liability §§ 396, 407, 411, 439.

Liability, under dramshop acts, of one who sells or furnishes liquor otherwise than in operation of regularly established liquor business. 8 ALR3d 1412.

Common-law right of action for damage sustained by plaintiff in consequence of sale or gift of intoxicating liquor or habit-forming drug to another. 97 ALR3d 528.

**Intoxicating liquors: employer's liability for furnishing or permitting liquor on social occasion. 51 ALR4th 1048.**

Justice ORR concurring.

Justice WEBB joins in this concurring opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 113 N.C. App. 303, 438 S.E.2d 427 (1994), affirming the 22 July 1992 summary judgment orders for defendants Frank A. Daniels, Jr., and The News and Observer Publishing Company and affirming partial summary judgment for plaintiffs as to defendant Charles J. Jeffries' liability, entered on 22 July 1992 and amended on 29 July 1992. These orders were entered by Stephens (Donald W.), J., in Superior Court, Wake County. Heard in the Supreme Court 11 January 1995.

*Young Moore Henderson & Alvis P.A., by Jerry S. Alvis, R. Michael Strickland, and David M. Duke, for plaintiff-appellants and -appellees.*

*Bailey & Dixon, L.L.P., by Gary S. Parsons, Patricia P. Kerner, and Kenyann G. Brown, for defendant-appellant Jeffries.*

*Yates, McLamb & Weyher, L.L.P., by Dan J. McLamb and Suzanne S. Lever, for defendant-appellee Daniels.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Samuel G. Thompson, John D. Madden, and James Y. Kerr, II, for defendant-appellee The News and Observer Publishing Company.*

*Carruthers & Roth, P.A., by Richard L. Vanore and Michael J. Allen, for unnamed defendant-appellee Michigan Mutual Insurance Company.*

*Harold M. White, Jr., on behalf of Mothers Against Drunk Driving North Carolina State Organization, amicus curiae.*

*Glenn, Mills and Fisher, P.A., by Robert B. Glenn, Jr., on behalf of the North Carolina Academy of Trial Lawyers, amicus curiae.*

FRYE, Justice.

The pleadings and the forecast of evidence tended to show that on 27 October 1990, Caleb Willard Camalier was operating his 1982

Toyota automobile on Highway 70 near Raleigh when his automobile collided with a Volvo automobile operated by defendant Charles J. Jeffries. Camalier was seriously injured in the accident and remained hospitalized in a comatose state for nine months until his death on 27 July 1991.

At the time of the accident, Jeffries was employed by The News and Observer Publishing Company (the Publishing Company) as a newspaper reporter. Prior to the collision, Jeffries attended a retirement party (the party) in the backyard of Frank A. Daniels' home in Raleigh. The party was given in honor of Claude Sitton, the outgoing editor of *The News and Observer*, a newspaper published by the Publishing Company. At the time of the party, Daniels was the publisher of *The News and Observer* and served as an officer and director of the Publishing Company.

The Publishing Company hired Paul D. Broughton d/b/a Broughton Special Events Catering (Broughton) to organize and handle the details of the party. Broughton hired Savory Fare, Inc., to assist in the preparation and service of the food and drinks at the party. Employees of Broughton and Savory Fare were the exclusive bartenders for the party.

The Publishing Company hired McLaurin Parking Company (McLaurin) to handle parking arrangements. McLaurin was responsible for coordinating remote parking and the shuttling of guests between the parking areas and the party. Steve McLaurin, vice president of McLaurin, was present to oversee and supervise the parking arrangements. In addition, vehicles were available to provide guests with rides to their homes, if needed.

Jeffries arrived at the party at approximately 7:30 p.m. and stayed until approximately 10:15 p.m. While at the party, Jeffries engaged in conversations with several party guests, ate some food, and drank three or four gin and tonics which he obtained from the bars at Daniels' home. Several dozen guests who knew Jeffries saw or spoke with him at the party and stated he did not appear to be impaired or intoxicated at any time during the evening.

When Jeffries left the party, he, along with other guests, was transported by van to his automobile. Steve McLaurin sat in the front seat and observed Jeffries negotiate his way over and past two women to exit the van. Additionally, McLaurin observed Jeffries walk to his automobile. Jeffries did not appear intoxicated; instead, he

appeared to be perfectly normal to McLaurin. At approximately 10:40 p.m., defendant Jeffries was driving west on Highway 70 when his automobile collided with the automobile being driven by Caleb Camalier, leading to serious injuries and the subsequent death of Camalier.

There were no independent witnesses to the accident; however, witnesses who observed Jeffries after the accident stated that he appeared visibly impaired at the scene. Approximately thirty-five minutes had elapsed between the time Jeffries left the party and the time witnesses observed him at the scene following the accident. Jeffries was transported to Durham County General Hospital where a blood sample was drawn from him at 12:04 a.m., approximately one hour and forty-five minutes after he left the party. The blood sample was analyzed and determined to contain an alcohol concentration of 0.191. Jeffries was charged with driving while impaired and failing to stop for a red light. On 15 February 1991, pursuant to a plea bargain with the State, Jeffries entered pleas of guilty to the charges.

Plaintiffs filed their complaint against defendants on 18 March 1991. Plaintiffs alleged that Jeffries' negligent operation of his vehicle caused the accident leading to their injuries and damages. Additionally, plaintiffs alleged that defendants Daniels and the Publishing Company negligently served or caused to be served unlimited and highly intoxicating alcoholic beverages to Jeffries when they knew or should have known that Jeffries would become intoxicated. Plaintiffs further alleged that Jeffries' attendance at the party and consumption of alcohol while there were within the course and scope of his employment and that the Publishing Company was liable to plaintiffs under the doctrine of *respondeat superior*. After Camalier's death, the complaint was amended to include a wrongful death claim against each defendant.

On 22 July 1992, the trial court granted defendants Daniels' and the Publishing Company's motions for summary judgment and granted plaintiffs' motion for partial summary judgment as to Jeffries' liability. In an order dated 29 July 1992, the trial court certified the order granting plaintiffs' partial summary judgment for immediate appeal. In a unanimous decision, the Court of Appeals affirmed. *Camalier v. Jeffries*, 113 N.C. App. 303, 438 S.E.2d 427 (1994). On 7 April 1994, this Court allowed plaintiffs' and defendant Jeffries' petitions for discretionary review. For the reasons stated herein, we affirm the decision of the Court of Appeals.

**[1]** First, we address the two arguments raised by defendant Jeffries. Jeffries contends that the Court of Appeals erred in affirming partial summary judgment for plaintiffs as to Jeffries' liability to Camalier's estate because there is a genuine issue of material fact remaining to be resolved. Jeffries argues that the Court of Appeals failed to consider all of the following evidence which was submitted in response to plaintiffs' motion for partial summary judgment: (1) Jeffries' affidavit in which he fully explained his reasons for entering guilty pleas to the charges of running a red light and driving while impaired; (2) testimony by plaintiffs' expert witness that versions of the events given by Jeffries and other party guests were inconsistent with SBI test results; (3) affidavits and depositions of other party guests who indicated that defendant was not intoxicated when he left the party; and (4) the investigating officer's report, indicating that Jeffries stated that he thought he had the green light at the time of the accident. We agree with Jeffries' contention that the Court of Appeals' opinion does not clearly reflect a consideration of all the evidence Jeffries presented in opposition to plaintiffs' summary judgment motion. However, after reviewing all the evidence, we agree with the Court of Appeals that partial summary judgment in favor of plaintiffs was appropriate in this case.

In accordance with Civil Procedure Rule 56(c), we have stated that summary judgment should be " 'granted when, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' " *Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co.*, 326 N.C. 771, 774, 392 S.E.2d 377, 379 (1990) (quoting *Beckwith v. Llewellyn*, 326 N.C. 569, 573, 391 S.E.2d 189, 191, *reh'g denied*, 327 N.C. 146, 394 S.E.2d 168 (1990)). In order to be entitled to summary judgment, the moving party must bear the burden and show that no questions of material fact remain to be resolved. *Id.*

In their complaint, plaintiffs allege that Jeffries' negligent operation of his automobile caused the collision with Camalier's automobile and ultimately Camalier's death. It is well established that in order to prevail in a negligence action, plaintiffs must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages. *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 395 S.E.2d 112 (1990).

N.C.G.S. §§ 20-138.1 and 20-158(b)(2) impose public safety duties on automobile drivers. N.C.G.S. § 20-138.1 imposes a duty on individuals to not operate vehicles upon public streets and highways while impaired, while N.C.G.S. § 20-158(b)(2) requires individuals to come to a complete stop when approaching a red light. In this case, as to defendant Jeffries, there is a clear forecast of evidence tending to show duty, proximate cause, and damages. The essential controversy relates to breach of duty. However, even as to this element, defendant Jeffries does not argue that plaintiffs have failed to forecast substantial evidence that Jeffries breached a duty owed to plaintiffs. Rather, Jeffries contends that his forecast of evidence, when considered in light of plaintiffs' forecast, created a genuine issue of material fact as to whether he breached a duty to plaintiffs by driving while impaired and running the red light. If Jeffries is correct in this assertion, then partial summary judgment against him was inappropriate. Thus, we must decide whether Jeffries' evidence was sufficient to create a genuine issue of material fact as to whether he breached a duty to plaintiffs by running the red light and driving while impaired.

Jeffries pled guilty to the charges of running a red light and driving while impaired. However, while evidence of a plea of guilty to a criminal charge is generally admissible in a civil case, it is not conclusive evidence of defendant's culpable negligence and may be explained. *Grant v. Shadrick*, 260 N.C. 674, 133 S.E.2d 457 (1963). Accordingly, we have reviewed all the evidence in support of and in opposition to plaintiffs' motion for partial summary judgment in order to determine whether Jeffries' explanation is sufficient to create a genuine issue of material fact as to whether he breached a duty to plaintiffs by running the red light and driving while impaired.

Jeffries argues that partial summary judgment in favor of plaintiffs was improper because he presented a forecast of evidence sufficient to show that he could make a *prima facie* case at trial that he did not breach a duty owed to plaintiffs and, therefore, he was not liable to Camalier's estate. Jeffries' forecast included his affidavit in which he stated that he believed that the light was green in his direction when he entered the intersection. In his affidavit, Jeffries explained that he pled guilty to the charge of driving while impaired because he could not risk being convicted and spending additional time in jail since he had family responsibilities. Jeffries' plea arrangement required him to spend only one night in jail. Additionally, Jeffries' affidavit indicated that he pled guilty to the charge of running a red light because plaintiffs' attorney indicated that he would insist

that the district attorney prosecute Jeffries on the driving while impaired charge if Jeffries did not plead guilty to running the red light.

In addition, Jeffries' forecast of evidence included depositions and affidavits of other party guests, which reveal that Jeffries did not appear intoxicated or impaired at the party. It also included his pre-plea statement to the investigating officer that the light was green at the time he approached it. The police report indicates that Jeffries told the investigating officer, "I don't know what color the lights were. I think they were green. I'm not sure."

Furthermore, Jeffries argues that the deposition testimony of plaintiffs' own expert witness, a toxicologist, supports his contention that summary judgment was inappropriate. The toxicologist indicated that Jeffries' alcohol concentration of 0.191 was inconsistent with Jeffries' and other party guests' account of Jeffries' appearance and behavior at the party. A review of the transcript reveals that the toxicologist indicated that there were at least three possibilities for the inconsistencies; however, Jeffries makes no specific allegations which pertain to the three possibilities.

On the other hand, plaintiffs' forecast of evidence included a transcript of Jeffries' guilty pleas to running a red light and driving while impaired, an SBI report indicating that Jeffries' alcohol concentration was 0.191 less than two hours after he left the party, and the testimony of witnesses who observed Jeffries shortly after the accident and who stated that Jeffries appeared intoxicated.

Any doubt as to the color of the light and whether Jeffries was intoxicated at the time of the accident was removed at Jeffries' 15 February 1991 appearance in District Court, Wake County, when judgment was entered upon his pleas of guilty to driving while impaired, in violation of N.C.G.S. § 20-138.1, and to running a red light, in violation of N.C.G.S. § 20-158(b)(2). The following colloquy occurred in the District Court between the trial judge and Jeffries:

Q. Have you discussed your case fully with your lawyer and are you satisfied with his legal services?

A. Yes.

Q. Do you understand that you are pleading guilty to the misdemeanors of, Number 1, driving while subject to an impairing substance; that is, alcoholic beverages, in violation of G.S. 20-138.1;

**CAMALIER v. JEFFRIES**

[340 N.C. 699 (1995)]

and, 2, by entering an intersection while a stop light was emitting a steady red light for traffic in your direction of travel in violation of G.S. 20-158(b)(2)?

A.  Yes.

Q.  Have the charges been explained to you by your lawyer and do you understand the nature of the charges, and do you understand every element of each charge?

A.  Yes.

Q.  Do you understand that upon your plea you could be imprisoned for a possible maximum sentence of one year and two months and a minimum mandatory sentence of one day in jail?

A.  Yes.

Q.  Do you understand that you have the right to plead not guilty and to be tried by a jury and at such trial to be confronted with and to cross-examine the witnesses against you, and by this plea you give up those and your other constitutional rights relating to trial by jury or judge?

A.  Yes.

Q.  And actually the earlier part of that last question, these particular cases being misdemeanor traffic offenses, that you'd also have the right to be tried by a judge in district court?

A.  Yes.

Q.  Do you now personally plead guilty to these charges?

A.  Yes, sir.

Q.  Are you in fact guilty of these charges?

A.  Yes.

Q.  Have you agreed to plead as a part of a plea arrangement?

Before you answer, I advise you that the Courts have approved plea negotiating, and if there is such, you may advise me truthfully without fear of incurring my disapproval.

A.  Yes.

Q.  So you're entering pleas of guilty to both of these charges; is that right?

A. Yes.

During the course of the proceedings, Jeffries signed a transcript of his plea under oath. Additionally, Jeffries' attorney, in asking the court to accept the plea arrangement, stated to the court in the presence of Jeffries: "By virtue of this plea he subjects himself to very serious civil liability." Thereafter, the trial judge made appropriate findings and conclusions and entered judgment in accordance with the pleas of guilty.

After reviewing all of plaintiffs' and defendant Jeffries' forecasts of evidence, we conclude that plaintiffs have established that Jeffries breached a duty to plaintiffs by driving while impaired and running the red light. We further conclude that Jeffries has not forecast sufficient evidence to create a genuine issue of material fact as to this breach of duty. Accordingly, we affirm the Court of Appeals' decision which affirmed the trial court's order for partial summary judgment for plaintiffs as to Jeffries' liability.

For his final assignment of error, defendant Jeffries argues that the trial court erred in granting plaintiffs' motion for partial summary judgment on the basis of estoppel. We find it unnecessary to address this assignment of error since we have held that partial summary judgment against Jeffries was proper on another basis.

[2] Next, we address the four arguments made by plaintiffs regarding defendants Daniels and the Publishing Company. In their first and fourth arguments, plaintiffs contend that the Court of Appeals erroneously affirmed the trial court's grant of summary judgment for these defendants because plaintiffs presented competent evidence that defendants Daniels and the Publishing Company negligently served alcohol to Jeffries when they knew or should have known Jeffries was intoxicated and, thus, were liable as social hosts under this Court's decision in *Hart v. Ivey*, 332 N.C. 299, 420 S.E.2d 174 (1992). Plaintiffs note that summary judgment is rarely appropriate in a negligence case. *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972). However, like the trial court and the Court of Appeals, we conclude that this is one of those rare negligence cases where summary judgment is appropriate.

We have held that a defendant, as the moving party, may meet its burden on summary judgment " 'by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to sup-

port an essential element of his claim or cannot surmount an affirmative defense which would bar the claim.' " *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 26 (1992) (quoting *Boudreau v. Baughman*, 322 N.C. 331, 342-43, 368 S.E.2d 849, 858 (1988)) (emphasis omitted). To survive a motion for summary judgment, the non-moving parties must have "forecast sufficient evidence of all essential elements of their claim[]" to make a *prima facie* case at trial. *Id.* All inferences must be drawn in favor of the non-moving party. *Id.*

In *Hart*, this Court addressed the issue of social-host liability, concluding that an individual may be held liable on a theory of common-law negligence if he (1) served alcohol to a person (2) when he knew or should have known the person was intoxicated and (3) when he knew the person would be driving afterwards. *Hart*, 332 N.C. at 305, 420 S.E.2d at 178. Defendants Daniels and the Publishing Company contend, and we agree, that the trial court properly entered summary judgment in their favor because plaintiffs' forecast of evidence was insufficient to establish one of the essential elements of the claim. There is no question that defendants Daniels and the Publishing Company caused alcohol to be served to Jeffries and knew or should have known Jeffries would be driving an automobile after the party. Thus, the first and third factors mentioned in *Hart* are not in serious dispute. The essential factor in dispute is the second: whether these defendants knew or should have known that Jeffries was intoxicated at the time he was served alcohol at the party. We conclude that plaintiffs' forecast of evidence was insufficient to establish that either Daniels or the Publishing Company knew or should have known that Jeffries was intoxicated at the time alcohol was served to him.

Plaintiffs' forecast of evidence was as follows: While at the party, Jeffries consumed three to four alcoholic beverages between the hours of 7:30 p.m. and 10:15 p.m. and did not consume any alcohol after he left the party. Approximately an hour and forty-five minutes after he left the party, Jeffries' alcohol concentration was 0.191. Expert testimony was offered to show that, in order for Jeffries' alcohol concentration to reach 0.191, he would have had to consume ten to thirteen ounces of alcohol during the hours he was at the party. Jeffries appeared visibly intoxicated after the accident and later pled guilty to driving while impaired and running a red light.

While plaintiffs' evidence tends to show that Jeffries was intoxicated at the party, or shortly thereafter, it does not meet the standard

espoused by this Court in *Hart* for social-host liability. The standard in *Hart* is whether the social hosts, Daniels or the Publishing Company, served alcohol to Jeffries when they *knew or should have known* Jeffries was intoxicated. While there were more than three hundred people at the party, plaintiffs failed to forecast any evidence that anyone at the party saw any indications of Jeffries' intoxication or believed that he was intoxicated at the time he was served alcohol at the party. Nor is there a forecast of evidence showing that Daniels, the Publishing Company, or the bartenders working for them, knew that Jeffries had consumed enough alcohol to become intoxicated. Plaintiffs' evidence is insufficient to forecast an essential element of their claim: that defendants Daniels and the Publishing Company knew or should have known Jeffries was intoxicated at the time alcohol was served to him.

In contrast, defendants Daniels and the Publishing Company have shown that an essential element of plaintiffs' claim is nonexistent. Defendants presented substantial evidence that Jeffries did not display any manifestation of impairment or intoxication at the party. Thirty-one people executed affidavits, and another twenty-one were deposed; each stated that they saw Jeffries at the party and that he did not appear impaired or intoxicated. Specifically, Steve McLaurin, one of the last people to see Jeffries when he left the party, stated in his deposition that he observed Jeffries in the parking lot after the party and did not observe that Jeffries was intoxicated or impaired. Similarly, Melanie Sill stated that she walked out of the party with Jeffries and then again observed him in the parking lot. Sill's observation indicated that Jeffries was not in any way intoxicated or impaired. None of the more than three hundred persons at the party indicated that Jeffries had too much to drink or appeared intoxicated. Thus, defendant's forecast of evidence is that defendants Daniels and the Publishing Company did not know or have reason to know that Jeffries was intoxicated or impaired while at the party. In viewing defendants' and plaintiffs' evidence in the light most favorable to plaintiffs, the non-moving parties, we conclude that defendants met their burden of showing that plaintiffs could not produce evidence to support their contention that these defendants served alcohol to Jeffries at a time when they knew or should have known that Jeffries was intoxicated. Accordingly, the Court of Appeals correctly affirmed the trial court's grant of summary judgment in favor of defendants Daniels and the Publishing Company on the issue of social-host liability.

**[3]** In their second argument, plaintiffs contend that the Court of Appeals erred in declining to consider "any evidence regarding Jeffries' condition or appearance after he got into his car and drove out of the parking lot [as being] immaterial and irrelevant." *Camalier*, 113 N.C. App. at 310, 438 S.E.2d at 432. Plaintiffs contend that evidence of Jeffries' visible intoxication shortly after he left the party is relevant and probative on the issue of whether defendants knew or should have known that Jeffries was intoxicated at the party. Under the circumstances of this case, we conclude that the Court of Appeals did not err in declining to consider this evidence.

Rejecting plaintiffs' argument, the Court of Appeals stated:

[W]e must look to the evidence relevant to the time Jeffries was served the alcoholic beverages and any outward manifestations which would reasonably lead defendants to know that Jeffries was under the influence.

*Camalier*, 113 N.C. App. at 309, 438 S.E.2d at 431. The Court of Appeals concluded that the record in this case was "devoid of any evidence showing actual or constructive knowledge by defendants of Jeffries' alleged intoxication when alcoholic beverages were served to him at the party." *Id.* We agree. The evidence of Jeffries' state of intoxication at the time of the accident, while admissible to prove that Jeffries was intoxicated, is not probative of the question of whether defendants Daniels and the Publishing Company knew or should have known Jeffries was intoxicated at the time alcohol was served to him at the party. Accordingly, we reject plaintiffs' second argument.

**[4]** For their third argument, plaintiffs contend that summary judgment for defendant Publishing Company was inappropriate because plaintiffs presented sufficient evidence that the party was an employment-related function of the Publishing Company and that the Publishing Company was vicariously liable under the doctrine of *respondeat superior* for Jeffries' negligent consumption of alcohol. We disagree.

Plaintiffs, noting that this Court has not yet addressed the issue of whether an employer may be held vicariously liable for the negligence of its employee who becomes intoxicated at an employer-sponsored function, cite *Chastain v. Litton Systems, Inc.*, 694 F.2d 957 (4th Cir. 1982), *cert. denied*, 462 U.S. 1106, 77 L. Ed. 2d 1334 (1983). There, the Fourth Circuit Court of Appeals, applying North Carolina law, stated:

"If an employee is negligent while acting in the course of employment and such negligence is the proximate cause of injury to another, the employer is liable in damages under the doctrine of respondeat superior, notwithstanding the fact that the employer, himself, exercised due care in the supervision and direction of the employee."

*Chastain*, 694 F.2d at 962 (quoting *Johnson v. Lamb*, 273 N.C. 701, 707, 161 S.E.2d 131, 137 (1968)). The *Chastain* court concluded that summary judgment for the defendant-employer was inappropriate since evidence that the employer sponsored a Christmas party for its 861 employees, that the party was held on the business premises, that the party began at 8:00 a.m. and continued during working hours, and that the employer required employees to check in by 8:00 a.m., in order to be paid for that day's work, raised a genuine issue of material fact as to whether the employee's attendance at the party and his consumption of alcohol could reasonably be considered to be within the scope of his employment. *Id.* Assuming, without deciding, that *Chastain* is a proper application of North Carolina law, we find this case factually distinguishable from *Chastain* and conclude that plaintiffs' forecast of evidence here does not raise a genuine issue of material fact as to whether Jeffries' attendance and consumption of alcohol at the party was within the scope of his employment.

In support of their contention that Jeffries' negligence occurred during the scope of his employment, plaintiffs rely on the deposition testimony of a business expert who opined that the party enhanced the business interests of the Publishing Company by encouraging employees to work hard to achieve similar recognition, by developing good morale and camaraderie among employees, and by generally increasing the productivity and profitability of the business. Further, plaintiffs rely on Jeffries' statements that he felt his attendance at the party "would help" and that he was concerned his failure to attend "might be noticed." However, plaintiffs concede that Jeffries did not state that he felt compelled to attend the party. This evidence is insufficient to forecast a genuine issue of material fact as to whether Jeffries' attendance at the party and negligent consumption of alcohol there were within the scope of his employment.

In contrast, defendants Daniels and the Publishing Company have shown that plaintiffs cannot prove that Jeffries' conduct was within the scope of his employment. Defendants presented substantial evidence that Jeffries and other Publishing Company employees were

not required to attend the party. No record of attendance was taken, and there was no evidence that an employee's failure to attend would have resulted in adverse consequences. Furthermore, the party was held on the weekend, on a day that Jeffries did not usually work and at a time that was after his usual working hours. Jeffries was not compensated for the time spent attending the party and was not required to work if he did not attend the party. In addition, the party was held at the private home of the newspaper's publisher, defendant Daniels, rather than at the Publishing Company's business facilities. Jeffries was employed by The News and Observer as a reporter, and he did no "reporting" while in attendance at the party. From the foregoing, we conclude that defendants have met their burden of showing that plaintiffs could not produce evidence to support their contention that Jeffries' attendance at the party and consumption of alcohol there were within the scope of his employment. Accordingly, we conclude that the Court of Appeals was correct in affirming the trial court's grant of summary judgment for defendant Publishing Company on the issue of vicarious liability.

Plaintiffs next contend that they presented sufficient evidence to support claims for negligent infliction of emotional distress and punitive damages against defendants Daniels and the Publishing Company and that summary judgment in favor of these defendants on these claims was inappropriate. Having determined that summary judgment for defendants Daniels and the Publishing Company was appropriate on plaintiffs' negligence claims because there was no evidence of negligence, we find it unnecessary to address this contention.

In summary, we affirm the Court of Appeals' decision which affirmed the trial court's order granting summary judgment in favor of defendants Daniels and the Publishing Company. Additionally, we affirm the Court of Appeals' decision which affirmed the trial court's order granting plaintiffs' motion for partial summary judgment as to defendant Jeffries' liability.

AFFIRMED.

Justice ORR concurring.

Although I concur with the factual analysis and conclusions reached by the majority, I feel it is necessary to write separately as to the underlying legal basis for "social host liability" in North Carolina.

In the leading case from our jurisdiction, *Hart v. Ivey*, 332 N.C. 299, 420 S.E.2d 174 (1992), this Court stated:

> We have not been able to find a case in this state dealing with the liability of a social host who serves an alcoholic beverage to a person who then injures someone while operating an automobile while under the influence of an intoxicating beverage. We believe, however, that the principles of negligence established by our decisions require that we hold that the plaintiffs in this case have stated a claim.

*Id.* at 304-05, 420 S.E.2d at 177.

The thrust of the *Hart* decision centered on the question of duty. The Court further stated:

> There remains the question of whether the defendants were under a duty to the plaintiffs not to serve the alcoholic beverage as they did. We said in *Council v. Dickerson's, Inc.*, 233 N.C. 472, 64 S.E.2d 551 (1951), "[t]he law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence." *Id.* at 474, 64 S.E.2d at 553. The defendants were under a duty to the people who travel on the public highways not to serve alcohol to an intoxicated individual who was known to be driving.

*Hart*, 332 N.C. at 305, 420 S.E.2d at 178.

In responding to the argument that no cause of action existed for "social host liability," the Court simply applied established negligence principles and noted, "we are not recognizing a new claim." *Id.* at 305-06, 420 S.E.2d at 178.

In light of *Hart*, the arguments in this case focused on the question of duty. As a result, the majority opinion deals with duty but fails to address what I perceive to be the primary area of focus in a "social host liability" case, and that is proximate cause and foreseeability.

> Under the common law rule it was not a tort to either sell or give intoxicating liquor to ordinary able-bodied men, and no cause of action existed against one furnishing liquor in favor of those injured by the intoxication of the person so furnished. The reason usually given for this rule being that the drinking of the liquor, not the remote furnishing of it, was the proximate cause of the injury. *See* 48 C.J.S., Intoxicating Liquors, § 430 (1947); 45 Am.

Jur. 2d, Intoxicating Liquor, § 553 (1969); 97 A.L.R. 3d 528, § 2 (1980).

*Hutchens v. Hankins*, 63 N.C. App. 1, 5, 303 S.E.2d 584, 587, *disc. rev. denied*, 309 N.C. 191, 305 S.E.2d 734 (1983).

> In recent years only a handful of courts have continued to follow the old rule of nonliability and refused to allow the injured person to recover from the liquor supplier. Two rationales are commonly advanced to support this rule. First, the proximate cause of both the patron's intoxication and the subsequent injury to the third party was held to be the consumption of liquor, not its sale or furnishing. Second, even if the sale or furnishing were found to have caused the patron's intoxication, the subsequent injury to a third party was held to be an unforeseeable result of the furnishing of the intoxicating beverage. The common law rule was succinctly stated in the oft-quoted passage from *State for Use of Joyce v. Hatfield*, 197 Md. 249, 254, 78 A.2d 754, 756 (Md. App. 1951):

>> Apart from statute, the common law knows no right of action against a seller of intoxicating liquors, as such, for "causing" intoxication of the person whose negligent or willful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. The law (apart from statute) recognizes no relation of proximate cause between the sale of liquor and a tort committed by a buyer who has drunk the liquor.

> The rules rests [sic] in part on the further assumption that it is not a tort to sell liquor to an able-bodied man, since the liquor vending business is legitimate and the purchaser is deemed to be responsible. The other common justification for adherence to the old rule is that, in the final analysis, the controlling consideration is one of public policy, and the decision as to liability should be left to the legislature.

*Hutchens*, 63 N.C. App. at 7-8, 303 S.E.2d at 588-89 (footnotes omitted).

The Court of Appeals in *Hutchens* concluded:

> We agree with the reasoning of the Supreme Court of California in *Vesely v. Sager, supra*, 5 Cal. 3d [153,] 163-64, 95 Cal. Rptr. [623,] 630-31, 486 P.2d [151,] 158-59 [(1971)], as it held:

To the extent that the common law rule of nonliability is based on concepts of proximate cause, we are persuaded by the reasoning of the cases that have abandoned that rule . . . [A]n actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct . . .

. . . Moreover, "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." . . .

. . . Insofar as proximate cause is concerned, we find no basis for a distinction founded solely on the fact that the consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication. Under the above principles of proximate cause, it is clear that the *furnishing* of an alcoholic beverage to an intoxicated person *may be a proximate cause* of injuries inflicted by that individual upon a third person. *If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent.* (Citations omitted.) (Emphasis supplied.)

*Hutchens,* 63 N.C. App. at 11-12, 303 S.E.2d at 591.

The thrust of the *Hutchens* opinion was to eliminate under certain circumstances the inflexible barrier to suits against vendors of alcoholic beverages by persons injured by the negligence of consumers of the alcoholic beverages. Thus, after *Hutchens,* the common law proximate cause/foreseeability bar to such suits had been partially overcome. However, the bar still remained as to social host situations.

In the Court of Appeals decision in *Hart v. Ivey,* 102 N.C. App. 583, 403 S.E.2d 914 (1991), *aff'd,* 332 N.C. 299, 420 S.E.2d 174 (1992), the majority extended the rule enunciated in *Hutchens* to social host

## CAMALIER v. JEFFRIES

[340 N.C. 699 (1995)]

cases but only in the context of the negligence *per se* claim based on a public safety statute and not to a common law claim. This Court, however, in the *Hart* decision did find a common law cause of action but made no comment on the proximate cause/foreseeability issue except to say that the jury could find from the evidence that the negligent conduct was the proximate cause of the injury to plaintiffs.

It should be noted that the California legislature subsequently enacted legislation to abrogate the ruling in *Vesely* and subsequent decisions that followed or expanded the ruling.

> As we previously indicated, the stated purpose of section 25602 is to abrogate the rulings in *Coulter v. Superior Court* (1978) 21 Cal. 3d 144, 145 Cal. Rptr. 534, 577 P.2d 669, *Bernhard v. Harrah's Club* (1976) 16 Cal. 3d 313, 128 Cal. Rptr. 215, 546 P.2d 719[, *cert. denied*, 429 U.S. 859, 50 L. Ed. 2d 136 (1976),] and *Vesely v. Sager* (1971) 5 Cal. 3d 153, 95 Cal. Rptr. 623, 486 P.2d 151, and reaffirm "prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person." (§ 25602, subd. (c).) *Coulter, Bernhard* and *Vesely* were cases where the plaintiffs were injured by intoxicated operators of motor vehicles, and were suing the persons or entities who served the alcoholic beverages to the defendant drivers. Obviously, section 25602 now immunizes the person furnishing the alcohol from such liability.

*Cantwell v. Peppermill, Inc.*, 25 Cal. App. 4th 1797, 1802-03, 31 Cal. Rptr. 2d 246, 249 (1994).

The time has now come, in my opinion, for this Court to squarely address "social host liability" on the grounds of proximate cause and foreseeability rather than duty. Based upon the facts of this case, I conclude that the uncontroverted facts show that the defendants/ social hosts took every reasonable step to safely serve alcoholic beverages to the guests. Therefore, on the grounds of foreseeability and proximate cause, I would agree with the result reached that summary judgment was properly granted for defendants Daniels and the News and Observer Publishing Company. To hold otherwise would impose liability simply for the act of serving alcoholic beverages. As *Hutchens* and *Hart* both imply, the act of serving alcohol to a person whom you knew or should have known to be intoxicated and plan-

ning to drive would present a set of facts which would arguably survive a motion for summary judgment—at least as to the issues of proximate cause and foreseeability. Such was not the case here.

Justice WEBB joins in this concurring opinion.